UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-cv-60115-ALTMAN

**DON SMITH**,

    *Appellant*,

*v.*

**SONYA S. SLOTT**,

    *Appellee.*

_____/

## ORDER AFFIRMING BANKRUPTCY COURT

Before us again is an appeal from *In re No Rust Rebar, Inc.*, Case Nos. 21-12188 (the "Main Bankruptcy Case") and 23-01082 (the "Adversary Case").[1] This particular appeal comes to us from the Adversary Case between Sonya Salkin Slott, the Chapter 7 Trustee for No Rust Rebar, Inc. ("No Rust"), and Don Smith, the former principal of No Rust. In the Adversary Case, Smith requested leave to amend his response to Slott's Amended Complaint to add a declaratory-judgment counterclaim. *See generally* Motion to Amend [Adv. Bankr. ECF No. 44]. Smith's would-be-counterclaim sought a declaration that Smith "did not commit fraud," "was not dishonest," and "was not incompetent" "in his management of the debtor"—and that he "did not mismanage the debtor." *Id.* at 26. The Bankruptcy Court orally denied this relief for several reasons. *See* Transcript of Motion Hearing dated January 2, 2025 ("Order Tr.") [ECF No. 8] ¶ 16–21 ("[D]efendant's proposed counterclaim is an attempt to relitigate issues previously litigated and adjudicated in the Court's May

---

[1] While the relevant portions of the record were *both* transmitted to the District Court as a matter of course, *see* Transmittal of Record [ECF No. 8], *and* provided by the Appellant, *see* Appendix to Appellant's Brief [ECF No. 14], we'll refer directly to the underlying bankruptcy case dockets. Citations to the Main Bankruptcy Case will be styled [Main Bankr. ECF No. X], and citations to the Adversary Bankruptcy Case will be styled [Adv. Bankr. ECF. No. X].

23rd, 2022, conversion order, and the July 12th, 2023 substantive consolidation order, and as such amounts to nothing more than an impermissible collateral attack on both orders."); *see also id.* at 12:10–14 ("The Court is mindful that the pending appeal of the substantive Consolidation Order before the 11th Circuit deprives this Court of jurisdiction to enter orders that would affect or modify any issue or matter on appeal.").[2] Smith timely filed this appeal.

Having carefully examined the briefs and the record—and for the reasons we outline below—we **AFFIRM** the Bankruptcy Court's Order.

### THE FACTS

#### I. The Main Case

In our two prior orders in this case, we detailed the relevant circumstances of No Rust's bankruptcy action, *see generally Smith v. Slott*, 683 F. Supp. 3d 1331 (S.D. Fla. 2023) (Altman, J.), *aff'd sub nom.*, *In re No Rust Rebar, Inc.*, 2025 WL 1743293 (11th Cir. June 24, 2025) ("*Slott I*"); *Smith v. Slott*, 754 F. Supp. 3d 1271 (S.D. Fla. 2024) (Altman, J.) ("*Slott II*"), so we'll limit our discussion here to the Main Bankruptcy Case orders that are most germane to this appeal—namely, the Order Converting Case to Chapter 7 (the "Conversion Order") [Main Bankr. ECF No. 193] and the Order Granting Trustee's Motion for Consolidation (the "Consolidation Order") [Main Bankr. ECF No. 441].

##### a. The Conversion Order

On May 23, 2022, the Bankruptcy Court converted No Rust's bankruptcy case from Chapter 11 to Chapter 7 (and appointed a trustee to manage the estate) because it found that a conversion would be "in the best interest of the estate and its creditors." Conversion Order at 1. The Bankruptcy Court explained that it could only convert the case—and preclude No Rust from operating as debtor-in-possession—"for cause," and that sufficient cause included "fraud, dishonesty, incompetence, or

---

[2] The Bankruptcy Court memorialized its oral ruling in a written Order Granting in Part and Denying in Part Defendant's Motion to Amend (the "Order") [Adv. Bankr. ECF No. 58].

gross mismanagement of the affairs of the debtor, either before or after the date of commencement of the case . . . or for failure to perform the obligations of the debtor under a plan confirmed under this subchapter." *Id.* at 18. In its Conversion Order, the Bankruptcy Court found "cause" for the conversion because Smith had commingled estate assets and liabilities with those of companies he controlled in a haphazard asset soup he called the "Family." *See id.* at 19 ("[T]he Family appears to have been a group of commingled entities whose responsibilities, assets, and liabilities were constantly shuffled to fit Smith's needs or whims."). "This commingling," the Bankruptcy Court held, "resulted from incompetence or gross mismanagement of No Rust's affairs at best, and fraud or dishonesty at worst, but most damningly created an incurable conflict between the interests of Smith and those of the estate." *Ibid.*; *see also id.* at 23 ("At best, Smith's unusual business practices constitute prepetition incompetence and gross mismanagement of the affairs of No Rust." (citation omitted)); *id.* at 30 ("Smith's prepetition failure to get a signed and written contract that includes an option to purchase the Property constitutes incompetence or gross mismanagement.").

Based on these findings (and others that aren't relevant here), the Bankruptcy Court converted the case to a Chapter 7 proceeding and appointed Slott to administer "all records and property of the estate[.]" *Id.* at 32; *see also* Notice of Appointment of Trustee [Main Bankr. ECF No. 195].

### b. The Consolidation Order

After her appointment as the Chapter 7 Trustee, Slott moved the Bankruptcy Court for an order "substantively consolidating RMC, REM, GES, and RAW [(the 'Smith Entities')] . . . and their assets and liabilities into th[e] Estate[.]" Motion to Substantively Consolidate Raw Materials Corp., Raw Energy Materials, Corp., Global Energy Sciences, LLC, and Raw, LLC into this Estate ("Consolidation Motion") [Main Bankr. ECF No. 385] at 1. After briefing from the parties, the Bankruptcy Court granted the Consolidation Motion. *See generally* Consolidation Order. The Bankruptcy Court explained that, under U.S. Supreme Court and Eleventh Circuit precedent,

3

"[s]ubstantive consolidation can be applied to non-debtor third parties," *id.* at 13, and found that the applicable factors justified consolidation, *see id.* at 14–23. The court added that, "despite being provided ample opportunity, the [Smith Entities] raised no substantive arguments in opposition to consolidation or to contest the applicability of the[se] . . . factors." *Id.* at 24. The Bankruptcy Court also rejected the Smith Entities' various procedural arguments. *See* Consolidation Order at 24–39.

Smith (and the Smith Entities) asked us to reverse the Consolidation Order for several reasons—all of which we addressed and rejected. *See Slott II*, at 1311 ("After careful review, in sum, we hereby **ORDER and ADJUDGE** that the Bankruptcy Court's Order Granting the Trustee's Motion to Substantively Consolidate [ ] is **AFFIRMED**."). Notably, Smith claimed on appeal "that the Bankruptcy Court misapplied the law of collateral estoppel by entering a consolidation order based on factual findings from [the Conversion Order] that involved a *different* legal issue and *different* parties." *Id.* at 1277 (emphasis in original); *see also id.* at 1305–06 ("The Appellants claim—as they did below—that they were total strangers to the prior Conversion Order, had no representation in the prior process, and had no opportunity to address factual and legal bases for merging their separate assets into the bankruptcy estate." (cleaned up)). In rejecting this argument, we explained that the Bankruptcy Court *could* "apply collateral estoppel to a party who didn't technically participate in the original proceeding," *id.* at 1306, and held that Smith and the Smith Entities were bound by the Conversion Order's findings, even though they weren't (at that time) *technically* parties to the Main Bankruptcy Case.

## II. The Adversary Case

In 2023, Slott, as Chapter 7 Trustee, initiated an adversary proceeding in the No Rust matter against Smith. *See generally* Adv. Bankr. Docket. The operative complaint in that action was filed on August 2, 2023, and seeks to avoid certain post-petition transfers Smith had made. *See generally* Amended Complaint [Adv. Bankr. ECF No. 14]. After an unsuccessful motion to dismiss, *see* Order

4

Denying Defendant's Motion to Dismiss [Adv. Bankr. ECF No. 20], Smith timely filed his Answer and Affirmative Defenses to the Amended Complaint on October 11, 2023, *see* Answer and Affirmative Defenses [Adv. Bankr. ECF No. 23]. The litigation between the parties proceeded normally until December 2, 2024—over a year after Smith submitted his Answer—when Smith filed a Motion to Amend his response to Slott's Amended Complaint. *See generally* Motion to Amend.

In his Motion to Amend, Smith sought permission to add a counterclaim to his response. Smith told the Bankruptcy Court that "[t]he Counterclaim is asserted due to the continuing negative effect of the Conversion Order on Smith, personally. The suggestions in the Conversion Order that Smith was incompetent or fraudulent has prevented him from going into any business ventures with investors." *Id.* at 2. Smith argued that the Bankruptcy Court's "findings in the Conversion Order are not binding upon him personally because he was not a direct party to the Conversion Order. Smith did not have standing to appeal or seek reconsideration of the Conversion Order, so certain findings therein may not be necessarily found against him in the Counterclaim." *Id.* at 2.

Slott opposed this request. *See generally* Objections to Motion to Amend [Adv. Bankr. ECF No. 48]. In Slott's view, the proposed counterclaim was merely "a transparent, bad faith effort" to attack the Bankruptcy Court's Conversion Order. *See id.* at 3. According to Slott, "Smith was *the* central figure in the highly contested proceedings that led to the Conversion Order. He and his commingling of both his various dominated businesses and his personal affairs is the 'glue' that holds the Conversion Order together." *Id.* at 4 (emphasis original). And (Slott said) Smith's claim that he couldn't appeal the Conversion Order was frivolous. *See ibid.* ("As it was a main case order, and not an order in an adversary proceeding, of course he is not a 'named party,' as there is no such thing in that context. But to assert that he was not a 'direct party' to that contested matter is ludicrous. If anything, he was the *most* direct party to that matter." (emphasis original)); *see also ibid.* ("Moreover, in his personal capacity, Smith has twice lost on this point before the District Court. Smith personally appealed the

Green Tech settlement, along with others. In that appeal, the District Court [ ] expressly found the findings of the Conversion Order binding on those appellants, which included Smith personally. . . . What person other than Smith could have authorized such an appeal—or chosen not to pursue such? There is no such other person. That choice was Smith's and Smith's alone.").

The Bankruptcy Court agreed with Slott, denied Smith's Motion to Amend, *see* Order at 2 ("The Motion is **Denied in Part** as to the counterclaim."), and announced its oral ruling on January 2, 2025, *see generally* Order Tr. In that oral ruling, the Bankruptcy Court cited several grounds for its denial of Smith's request to add a counterclaim. Most importantly, the Bankruptcy Court found that Smith's proposed counterclaim was "nothing more than an impermissible collateral attack" on the Conversion and Consolidation Orders, Order Tr. at 8:16–22, and that the factual findings underpinning the Conversion Order precluded Smith's declaratory-judgment counterclaim, which expressly attacked those findings, *see id.* at 10.[3] "The preclusive effect of the Conversion Order and its factual findings," the Bankruptcy Court explained, "are best viewed through the lens of res judicata, a term that encompasses both claim preclusion and issue preclusion." *Id.* at 10:15–19 (citing *Taylor*, 553 U.S. at 892). "Issue preclusion," the Bankruptcy Court observed, "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue occurs in the context of a different claim . . . . In other words, successive re-litigation of essential issues of fact litigated and resolved in the Court's conversion order, even if the issue occurs in the context of a different claim, are barred." *Id.* at 10:20–11:12. In the Bankruptcy Court's view, then, the doctrine of issue preclusion provided it with "specific and significant reason to deny the debtor's motion to amend its pleadings to include the proposed counterclaim. The

---

[3] As we've said in a prior order, "[b]ecause the Conversion Order was never appealed, we accept its findings as true." *Slott I*, at 1340 n.5 (citing *In re Cummings*, 381 B.R. 810, 823 (S.D. Fla. 2007) (Gold, J.)).

6

declaratory relief sought by the defendant is barred by res judicata, and as such, the assertion of the counterclaim, even if permissible, would prove futile." *Id.* at 11:18–23. And the Bankruptcy Court rebuffed out of hand Smith's argument that he lacked standing to appeal the Conversion Order, "expressly reject[ing] the idea that the former debtor-in-possession's principal is a non-party to a bankruptcy proceeding." *Id.* at 12:5–7. Smith appealed, and this Order follows.

## THE LAW

District courts have "jurisdiction to hear appeals from final judgments, orders, and decrees . . . of bankruptcy judges." *In re Charter Co.*, 778 F.2d 617, 621 (11th Cir. 1985) (quoting 28 U.S.C. § 158(a)). "In reviewing bankruptcy court judgments, a district court functions as an appellate court. It reviews the bankruptcy court's legal conclusions *de novo*, but must accept the bankruptcy court's factual findings unless they are clearly erroneous." *In re JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993); *see also In re Gaddy*, 851 F. App'x 996, 999 (11th Cir. 2021) ("A bankruptcy court abuses its discretion when it either misapplies the law or bases its decision on factual findings that are clearly erroneous."). "*De novo* review requires the court to make a judgment independent of the bankruptcy court's, without deference to that court's analysis and conclusions." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1295 (11th Cir. 2001). And "[t]he bankruptcy court's findings of fact are not clearly erroneous unless, in light of all the evidence, we are left with the definite and firm conviction that a mistake has been made." *In re Int'l Pharm. & Disc. II, Inc.*, 443 F.3d 767, 770 (11th Cir. 2005).

When a party may no longer amend its pleadings as a matter of course under Federal Rule of Civil Procedure 15, a defendant may only amend its response with the opposing party's written consent, or the leave of the court. *See* FED. R. CIV. P. 15(a)(2).[4] "Leave to amend should be freely given, but a [ ] court can deny leave to amend the complaint when amendment would be futile." *Wade*

---

[4] Fed. R. Civ. P. 15 applies in an adversary bankruptcy proceeding. *See* FED. R. BANKR. P. 7015.

7

*v. Daniels*, 36 F.4th 1318, 1328 (11th Cir. 2022) (citing *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that leave to amend should be "freely given" "[i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, *futility of amendment*, etc." (emphasis added)).

## ANALYSIS

The Bankruptcy Court denied Smith's Motion to Amend because it found that his proposed counterclaim was an impermissible collateral attack on the Conversion and Consolidation Orders—and that it was thus barred by the doctrine of res judicata. *See* Order Tr. at 10:15–17 ("The preclusive effect of the Conversion Order and its factual findings [on Smith's proposed counterclaim] are best viewed through the lens of res judicata[.]"). The Bankruptcy Court explained that Smith's counterclaim sought to re-litigate issues that had already been resolved—namely, whether he had acted incompetently or fraudulently in his management of the debtor. *See id.* at 10:1–7 ("There can be no doubt the foregoing facts at issue were essential to the Court's determination, as the Conversion Order was issued in response to the question presented, [ ] whether sufficient cause existed to remove the Chapter V debtor as debtor-in-possession for cause, including [ ] fraud dishonesty, incompetence, or gross mismanagement of the affairs of the debtor[.]").

Issue preclusion "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Under federal common law, issue preclusion has four elements: "(1) the issue at stake is identical to the one involved in the prior litigation; (2) the issue was actually litigated in the prior suit; (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in that action; and (4) the party against

8

whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding." *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1318 (11th Cir. 2012).

On appeal, Smith advances two attacks on the Bankruptcy Court's finding that his proposed counterclaim was barred by the doctrine of issue preclusion. *First*, he says that the fourth issue-preclusion element isn't satisfied here because he wasn't a party to the Conversion Order. *See* Appellant's Brief at 7 ("The bankruptcy court fused Don Smith and the Debtor as one notwithstanding the differences in their rights as of the entry of the Conversion Order[.]"); *see also id.* at 11 ("As between the Conversion Order and the Counterclaim there is *no identity of parties* and no identity of issues." (emphasis added)). But we've already addressed and rejected this argument. *See Slott II*, at 1305–1311; *see also* Appellee's Response at 17 ("In the District Court Subcon Order, Judge Altman spent some *fifteen* pages explaining why issue preclusion emanating from the Conversion Order did indeed bind Smith and his fellow appellants there." (emphasis original)). We won't spill any more ink on this issue and adopt everything we said on the subject in our lengthy discussion in *Slott II*.

*Second*, Smith contends that the Bankruptcy Court erred on the third element of issue preclusion because (he says) the determination that he acted fraudulently and/or incompetently wasn't a critical and necessary part of the Conversion Order. *See* Appellant's Brief at 11 (arguing that the Conversion Order merely "speculat[ed] that Smith was *either* incompetent or fraudulent" and that this language was "not a finding" of the Conversion Order" (emphasis original)); *see also* Appellant's Reply at 4–5 ("Smith is not attempting to re-litigate issues found in the Conversion Order in that there was no finding that Smith committed any frauds, or was incompetent. That portion of the Conversion Order is stated as alternative theories for conversion of the case from Chapter 11 to Chapter 7."). We disagree.

9

As the Bankruptcy Court correctly observed in its Conversion Order, it could only convert No Rust's bankruptcy case from Chapter 11 to Chapter 7 if it had "sufficient cause" to do so. Conversion Order at 18 (citing 11 U.S.C. §§ 1112(b)(1) & 1185(a)). Sufficient cause included "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor, either before or after the date of commencement of the case . . . or [ ] failure to perform the obligations of the debtor under a plan confirmed under this subchapter." *Ibid.* And that's exactly what the Bankruptcy Court found had happened here. *See id.* at 19 ("This commingling resulted from incompetence or gross mismanagement of No Rust's affairs at best, and fraud or dishonesty at worst, but most damningly created an incurable conflict between the interests of Smith and those of the estate. Accordingly, conversion or removal of No Rust as debtor in possession is required."). What's more, the Bankruptcy Court *specifically* determined that this finding was "essential to [its] determination" to convert the case. Order Tr. at 10:1–3.[5] And there can be no doubt that Smith's (proposed) declaratory-judgment counterclaim seeks to undo these *exact* findings—more than two years after the fact. *See* Motion to Amend at 26 ("Smith respectfully requests that the Court enter a judgment in his favor against the Trustee declaring that Smith: did not commit fraud in his management of the Debtor; did not grossly mismanage the affairs of the Debtor; was not dishonest in his management of the Debtor; and was not incompetent in his management of the Debtor.").

But here's the thing: Even if we agreed with Smith that issue preclusion *doesn't* bar his proposed counterclaim (we don't), he utterly fails to address the Bankruptcy Court's *second* reason for denying his Motion to Amend—*viz.*, his pending Eleventh Circuit appeal. In its oral ruling, the Bankruptcy Court explained that, "assuming arguendo that the amendments were not disguised collateral attacks

---

[5] For what it's worth, Smith cites no authority for his view that the Bankruptcy Court erred in holding that these findings were essential to the Conversion Order. *See generally* Appellant's Brief; Appellant's Reply.

10

on orders issued in the main case, the Court is mindful that the pending appeal of the substantive Consolidation Order before the 11th Circuit deprives this Court of jurisdiction to enter orders that would affect or modify any issue or matter on appeal, which would include any factual findings in the Conversion Order relied upon by the Court in issuing its substantive Consolidation Order." Order Tr. at 12:8–16.

The Bankruptcy Court is of course correct that Smith's proposed counterclaim, if successful, would directly contradict the Conversion Order's finding that Smith operated No Rust incompetently (at best) and fraudulently or dishonestly (at worst). *See* Conversion Order at 19. And we agree that Smith's pending appeal of *Slott II* precludes the Bankruptcy Court from altering or amending the Conversion Order, which forms the gravamen of the Main Bankruptcy Case. *See In re Fontainebleau Las Vegas Holdings, LLC*, 2013 WL 1147443, at *4 (Bankr. S.D. Fla. Mar. 19, 2013) (Cristol, Bankr., J.) ("'[T]his Court lacks the jurisdiction to alter the Order while it remains on appeal to the Eleventh Circuit."); *see also Markland v. Centro Grp., LLC*, 2021 WL 1705754, at *6 (S.D. Fla. Mar. 24, 2021) (Williams, J.), *aff'd sub nom., In Re Centro Grp., LLC*, 2021 WL 5158001 (11th Cir. Nov. 5, 2021) ("[A] court may not alter or expand upon the judgment of an earlier order that is pending appeal, in the context where subsequent action would alter the rights or obligations established by the previous order." (cleaned up)).[6] Since Smith has totally failed to address this portion of the Bankruptcy Court's Order, *see generally* Appellant's Brief; Appellant's Reply, he's forfeited any challenge he might've had to it, *see Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1152 (11th Cir. 2011) ("It is well settled that issues not raised in the district court in the first instance are forfeited.").

---

[6] Smith's pending appeal of *Slott II* directly implicates *both* the factual findings underpinning the Conversion Order *and* our decision to allow the Bankruptcy Court to apply those findings to the Consolidation Order. *See Slott II*, at 1311 ("We therefore agree with the Bankruptcy Court's decision to apply, in its consolidation analysis, the factual findings it made during the conversion proceedings."); *see also* Order Tr. at 10:12–14 ("The substantive Consolidation Order expressly adopts relevant findings from the Conversion Order." (cleaned up)).

11

\*   \*   \*

After careful review, therefore, we hereby **ORDER and ADJUDGE** that the Bankruptcy Court's Order Granting in part and Denying in part Smith's Motion to Amend [Adv. Bankr. ECF No. 58] is **AFFIRMED**.

**DONE AND ORDERED** in the Southern District of Florida on January 14, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record